[No. 4057.   Decided January 25, 1902.]

F. M. POWELL, *Respondent*, v. SUSIE A. NOLAN *et al.,*
*Appellants,* JAMES NOLAN *et al., Respondents.*

APPEAL — STATEMENT OF FACTS — CONCLUSIVENESS.

Where a proposed statement of facts, although not containing
all the evidence in an equitable cause, is filed by the appellant,
and no proposed amendments are filed and served by the re-
spondent, such proposed statement becomes for all purposes an
agreed statement of facts, and, under such circumstances, is con-
clusive on the parties on appeal, when the trial judge certifies
that it contains all the material facts.

SERVICE OF SUMMONS — PROOF OF SERVICE.

Under Bal. Code, § 4869, which provides for the commence-
ment of civil actions by service of a summons, and Id. § 4873,
which provides that a copy of the complaint must be served on
the defendant with the summons, and Id. § 4875, which provides
that personal service may be had by leaving a copy of the sum-
mons at the house of defendant's usual abode, with some person
of suitable age and discretion then resident therein, and Id. §
4882, which provides that, where service is made by a person
other than the sheriff, proof of service shall be made by the affi-
davit of such person indorsed or attached to the summons, show-
ing the time, place and manner of service, an affidavit attached
to the original summons in an action, reciting that affiant served
defendant by delivering to his wife at his usual place of resi-
dence, "a full, true, and correct copy of the complaint in said
action," does not show a service of summons upon the defendant,
and hence is insufficient to give the court jurisdiction over him.

SAME — CROSS COMPLAINT.

No judgment on any demand of a defendant in a cross com-
plaint setting up a lien against a co-defendant's property, can be
lawfully entered against such co-defendant until the latter has
been properly served and given the usual time to plead.

SAME — FINDING OF DUE SERVICE — EFFECT OF WANT OF SERVICE.

Although a finding that a defendant was regularly and duly
served with summons and complaint must be taken as true as
to appellants who have not excepted thereto, yet a judgment
against such defendant would not be valid, if, in fact, he had not
been properly served.

ASSIGNMENT PENDENTE LITE — NECESSITY FOR SUPPLEMENTAL PLEAD-
INGS.

A purchaser *pendente lite* of the claim of a party to an action
will not be permitted to come in and take part in the proceedings
in the cause without the filing of supplemental pleadings, unless
by consent of the other parties to the suit.

MECHANICS' LIENS — FORECLOSURE — COMMUNITY PROPERTY — NECES-
SARY PARTIES.

In an action to foreclose a mechanic's lien upon community
property both husband and wife must be brought in as parties,
in order to give the judgment rendered any validity as against
the community, since service of summons on one spouse is not
the commencement of an action as to the other spouse.

SAME — FORECLOSURE — RIGHT TO JURY TRIAL.

An action to foreclose a mechanic's lien, under Bal. Code,
§§ 5900-5918, is an equitable action, and parties thereto have no
right to demand a jury trial.

SAME — EVIDENCE.

In an action to foreclose a mechanic's lien for the construction
of a house on certain premises, the admission of evidence as to
work done by the plaintiff on other houses of defendant was
harmless error.

SAME.

In an action to foreclose a mechanic's lien upon community
property, evidence of a settlement had with one spouse who was
acting for the community, in order to ascertain the sum due on
the contract, and a written memorandum of the amount found
to be due, is admissible.

SAME — MORTGAGES — PRIORITIES.

A mortgagee of premises upon which there was at the time
a house in course of construction, for which the contractor was
entitled to a prior lien, cannot complain that payments made by
the owner were applied first toward the satisfaction of the con-
tractor's demand for extras, where there was no collusion shown
between the parties, and most of the extras had been furnished
prior to the execution of the mortgage, and the mortgage security
had been in no way impaired by such application of the payments
made.

SAME — NON-LIENABLE ITEMS — FRAUD.

The fact that a non-lienable item was included in a lien notice
would not destroy the entire lien, where there is plainly no fraud

attempted, and the lienable and non-lienable items are separable so as to enable the court to render a decree for the proper amount.

SAME — EVIDENCE — IDENTIFICATION OF LIEN NOTICE.

The production by plaintiff of a lien notice filed by him, with the auditor's certificate as to the filing and recording of the instrument, and proof of the lienor's signature to the claim and that he had filed the same, constitute a sufficient identification of the lien notice for its admission in evidence.

SAME — LIEN OF CONTRACTOR — INCLUSION OF CLAIMS OF OTHER LIENORS.

A contractor who is primarily liable for materials furnished for the construction of a house is entitled to enforce a lien therefor, although the material man has also filed a lien, where the contractor has requested the owner to pay same out of the balance due him under his contract, and the material man's lien is unenforceable in the action for want of proper service upon the owner.

SAME.

Under Bal. Code § 5909, which provides that the contractor shall recover on the claim filed by him the amount thereof, after deducting the claims of other parties for labor and material, and Id., § 5911, which provides for the payment of liens claimed in the following order: (1) All persons performing labor; (2) all persons furnishing material; (3) the sub-contractors; (4) the original contractors, a contractor has a lien for his contract price, although he furnished no material or performed no labor other than overseeing the construction of the building.

SAME — NOTICE OF CLAIM AGAINST — COMMUNITY PROPERTY — OMISSION OF NAME OF ONE SPOUSE.

Failure to include the husband's name in a lien notice as one of the reputed owners of the premises is not a ground of objection of the claim of lien, when it does not appear upon the face of the notice that the claimant had knowledge at the time of the husband's interest,

SAME — JOINT LIEN — ADMISSIBILITY TO ESTABLISH SEPARATE LIEN.

Under Bal. Code, § 5907, which provides that there may be one claim against two or more separate pieces of property, but requires the lien claim to designate the amount due on each piece of property, where the claimant had an entire contract for labor and material on four houses, it was unnecessary for

him to file separate lien claims, but it was sufficient if the amount chargeable against each house was separately alleged.

SAME — RELEASE — EFFECT.

The release of a mechanic's lien on one of four houses for which material had been furnished under an entire contract would not destroy the lien on the remaining houses.

SAME — NON-LIENABLE ITEMS — PERSONAL JUDGMENT.

Where a non-lienable item, through an honest mistake, has been included in a claim of lien, it should be deducted therefrom, and only a personal judgment thereon given the plaintiff.

SAME — FAILURE TO SERVE HUSBAND WITHIN LIMITATION PERIOD.

Where an action to enforce a lien on community property is not commenced against both spouses within eight calendar months after its filing, as provided by Bal. Code, § 5908, it cannot be enforced against the community, even though the action had been timely instituted against one of the spouses.

SAME — PERIOD ALLOWED FOR FILING.

Under Bal. Code, § 4837, which provides that a successor in interest to a party to an action shall have one year in which to move the court for leave to continue the action as such successor, one to whom a lien claimant had assigned his claim after the commencement of action to enforce his lien is entitled at any time within a year to file and serve supplemental pleadings showing his succession in interest, and to have an adjudication upon his rights.

APPEAL — REHEARING — FILING OF CORRECTED TRANSCRIPT SHOWING
    ING DUE SERVICE OF SUMMONS.

Where a judgment against an appellant has been reversed on the ground that the record shows want of proper service of summons upon him, and the respondent on petition for a rehearing sends up a corrected transcript showing that appellant had been duly served and the failure of the record to show that fact had been due to a mistake of the clerk in transcribing the return of such service, the respondent is entitled to have the reversal set aside and an order entered affirming the judgment.

SAME.

The failure of a respondent against whom a judgment of reversal had been entered to file in the court below an affidavit showing due service upon the adverse party until after the decision had been rendered on appeal will not entitle such respondent to an affirmance on showing due service in his petition for

rehearing, but the case will be remanded for the entry of judg-
ment in the lower court upon a retrial, with permission to the
respondent to file his summons with proof of service indorsed
upon or attached thereto.

SUBSTITUTION OF PARTIES — SUPPLEMENTAL PLEADINGS.

Although a defendant has been duly served with summons
and complaint by a party to an action, yet where such party
assigns his claim to a stranger, who obtains judgment against
the defendant in his own name without the filing of supple-
mental pleadings, such judgment is invalid as against the de-
fendant, when he was not present or represented in court at the
time the substitution was made.

Appeal from Superior Court, Spokane County.—Hon.
GEORGE W. BELT, Judge. Modified.

Gleason & Stayt, for appellants.

Stephens & Bunn, for respondent Powell; Danson &
Huneke, for respondent Griffith Heating & Plumbing Sup-
ply Company; John A. Peacock, for respondent Holland-
Horr Mill Company.

The opinion of the court was delivered by

WHITE, J.—This is an action to foreclose liens under
the mechanic's lien law (§§ 5900-5918, Bal. Code). At
the time the action was brought and final decree entered,
and at the time the building contracts were entered into,
the material furnished, and work done, the real estate on
which the buildings were erected was the community prop-
erty of James Nolan and Susan Nolan. It consisted of the
east half of lots 1 and 2, the south thirty feet of the east
half of lot 3, and lots 4, 5, and 6 in block 22, Wolverton &
Conlan's Addition to Spokane Falls. F. M. Powell verbal-
ly contracted with the community for the erection and con-
struction of a dwelling house on the east half of said lots
1 and 2 and the south thirty feet of said lot 3. The con-

tract price was $800. He furnished extras to the amount
of $120.20. He was paid on account $617.50. His lien
was for $302.75. He never personally performed any
labor on the house. He superintended its construction,
and selected and contracted for the material. He paid
for all the labor and material, except the claim for ma-
terials of the Holland-Horr Mill Company, amounting to
$235. He requested the community to pay this claim, and
deduct the amount of the same from the amount due him.
This the community failed to do. It was agreed between
the community and Powell, on January 16, 1900, that
there was due to Powell on the contract price of $800 the
sum of $302.75. Powell made the contract on the 20th
and commenced the erection of the house on the 23d day of
September, 1899, and completed his contract on the 23d
day of December, 1899. On the 23d day of October, 1899,
the community executed a mortgage for $1,000, in favor
of the Pennsylvania Mortgage Investment Company, on
the south forty feet of said lot 4 and the north twenty-
feet of said lot 3. This action was brought February 28,
1900, by F. M. Powell against Susie A. Nolan, James
Nolan and the Pennsylvania Mortgage Investment Com-
pany, as defendants. The original complaint is not in
the record. On April 17, 1900, an amended complaint
was filed by Powell. In this complaint P. J. Dullanty and
the Holland-Horr Mill Company were joined with the
other defendants as defendants. All that is alleged in the
amended complaint as to the interest of all of the said de-
fendants is that they have or claim to have some interest
in, claim to, or lien upon the premises, or some portion
thereof, which interest, claim, or lien, if any they or either
of them have, is subsequent, subject, and inferior to the
lien of Powell. Proof as to the service of the original com-

plaint and summons is by the affidavit of one Charles Grant attached to the summons, and is to the effect "that, on the 1st day of March, 1900, in the city and county of Spokane, state of Washington, he served the attached summons upon defendant Susie A. Nolan by delivering to and leaving with her personally a full, true, and correct copy of said summons, together with a full, true, and correct copy of the complaint in said action; that at said time and place he served the attached summons upon defendant James Nolan by delivering to Susie A. Nolan, wife of said James Nolan, and a person of suitable age and discretion, at the usual place of residence of said James Nolan, a full, true, and correct copy of the *complaint* in said action, said James Nolan not being at his said residence at the time of the said service." At the same time proper service was had on the Pennsylvania Mortgage Investment Company. Proof of service of the amended complaint on James Nolan is by the affidavit of one Grant attached to the amended complaint, and is as follows:

"That on April 18, 1900, in the city and county of Spokane, state of Washington, he served the foregoing amended complaint upon defendant James Nolan by delivering a full, true, and correct copy thereof to Susie A. Nolan personally at the usual place of residence of said James Nolan, she being the wife of said James Nolan, and a person of suitable age and discretion, said James Nolan not being at his said residence at the time of said service."

On the 29th of September, 1900, on motion of F. M. Powell, the default of James Nolan, for want of an answer to the amended complaint, was entered. On May 29, 1900, P. J. Dullanty filed what purports to be an answer and cross-complaint. In this answer and cross-complaint, to which is attached a summons in the usual form, Rebecca

S. Robinson and ———— McDaniels are made parties
defendant, in addition to the defendants in the amended
complaint.   The record fails to show any service of the
summons or cross-complaint of Dullanty on James Nolan.
The court finds as a fact due and regular service of the
summons and cross-complaint of Dullanty on James Nolan.
There is no exception to this finding.   On November 3,
1900, the Holland-Horr Mill Company filed what pur-
ported to be an answer and cross-complaint, to which was
attached a summons in the usual form.   The record fails
to show any service of this answer, summons, or cross-
complaint on James Nolan.   McDaniels never appeared in
the action.   James Nolan never appeared.   All the others
named did appear.   Issues were framed and joined by
cross-complaints, answers, and replies between the parties
who did appear.   During the progress of the trial it was
developed that on the 17th of October, 1900, Dullanty
assigned his claim to John H. Griffith and George H.
Hughes, partners under the firm name of the Griffith
Heating & Plumbing Supply Company.   During the trial
a motion was made by Dullanty, Griffith and Hughes,
that the firm of Griffith Heating & Plumbing Supply Com-
pany be substituted as the successor of Dullanty.   This
motion was granted over the objection of the appellants.
Dullanty's claim was for plumbing work and materials
upon four houses,—one on lot 6, another on lot 5 and part
of lot 4, another on part of lot 4 and part of lot 3, and
another on the east half of lots 1 and 2, of said block 22.
The community contracted with Dullanty to pay the rea-
sonable worth of said materials and work.   The work was
done and materials furnished between August 24 and
December 30, 1899.   The amount of the claim on the
four houses was $1,212.74.   The said amount was dis-

tributed as follows: First house, $254.78; the second
house, $306.05; the third house, $311.05, and the fourth
house,—on which Powell and the Holland-Horr Mill
Company claimed a lien,—$340.86. The lien notice of
Dullanty covered only houses 2, 3, and 4. The Holland-
Horr Mill Company's claim was for $235, a balance for
materials furnished Powell and used in the construction
of the fourth house. Rebecca S. Robinson claimed a su-
perior lien for $1,200 by reason of a mortgage executed
by the community, of date December 29, 1900, on said
lot 5 and the north ten feet of said lot 4, part of the
property on which Dullanty claimed a lien. It developed
on the trial that Dullanty had included in his lien an
item of $135 for laying water pipe for the four houses.
It appeared that Dullanty hired the work done by me-
chanics, and the material was furnished by material men.
He was simply a contractor; he superintended the work,
and selected and paid for the labor and material. The
court found in favor of Powell and gave him a judgment
against Susie A. Nolan and James Nolan for $325 and
costs, and an attorney fee of $50, decreed the same a lien
upon the real estate upon which the fourth house stood
and the appurtenances thereto, and adjudged the said
lien subject to the lien of the Holland-Horr Mill Company
for $235. It further adjudged that on the payment of the
last sum Powell should be entitled to recover $90, interest
and costs, and $50 as attorney's fee; and that said lien
was prior to the mortgage of the Pennsylvania Mortgage
Investment Company and the Dullanty lien. The court
found in favor of the Holland-Horr Mill Company, and
gave it a judgment against Susie A. Nolan and James
Nolan for $253 and costs, and an attorney's fee of $50,
and decreed the same a lien prior to the lien of all

others in the action on the real estate on which the fourth
house was erected and the appurtenances attached thereto.
The court found in favor of the Griffith Heating &
Plumbing Supply Company, gave it a judgment against
Susie A. Nolan and James Nolan for the sum of $712.74,
with interest and costs and an attorney's fee of $75 ; and
as to all said sum except $135 it was decreed that the
same was a lien on the real estate on. which was erected
the second, third and fourth houses, with their appurte-
nances, subject, however, to the lien of the Holland-Horr
Mill Company and the lien of Powell, and subject to the
lien of said mortgages. The decree ordered the real estate
sold to satisfy the liens, and decreed that the purchasers
at such sales should be let into possession, etc. The decree
recites that all the defendants have been regularly served
with summons and complaint and amended complaint,
and that all parties to the action have been duly and
regularly served with summons and cross-complaint. The
court found that James Nolan was regularly served per-
sonally with personal summons and amended complaint
and with the original complaint. The court also found
that James Nolan had been regularly and duly served
with summons and the cross-complaint of the Holland-
Horr Mill Company, within the time and in the manner
authorized by law. To these two findings the appellants
excepted, and the findings are assigned as error, because
said findings were not based upon the testimony intro-
duced in the cause, were not supported by the testimony
introduced in the cause, were not properly or sufficiently
supported by the evidence, or any part thereof, and were
not admitted by the pleadings or issues joined in said
cause. The appellants assigned as error that the return
did not show a valid service of the original summons and

complaint on James Nolan, and the court erred in assuming jurisdiction over the community upon the attempted service of the original complaint and summons as shown by the return thereof. They also assigned as error that the trial court erred in assuming jurisdiction over the claim of the Holland-Horr Mill Company, for the reason that said mill company had not served James Nolan with summons or cross-complaint or either, and the court had not acquired jurisdiction to give judgment thereon. The substitution on the trial of the firm of Griffith Heating & Plumbing Supply Company, and the making and signing of the decree, are also assigned as error.

The respondent Powell moves the court to strike from the files the purported statement of facts, for the reason that the same does not contain all the evidence admitted or introduced upon the trial, and for the further reason that it is necessary to include all the evidence in an equitable action, in order that the case may be tried. *de novo* in this court. He raises the further objection that Susie A. Nolan did not make or file any exceptions to the findings, and, so far as her appeal is concerned, the exceptions to the findings cannot be considered. The record disposes of the last objection. There are five pages of exceptions by Susie A. Nolan to the findings of fact and conclusions of law, among which are the exceptions on which many of the errors assigned are founded. The appellants filed and served a proposed statement of facts. No amendments were proposed by the respondents. When an appellant makes and files a proposed statement of facts, and no proposed amendments are filed and served, the proposed statement of facts becomes for all purposes an agreed statement of facts. § 5058; Bal. Code. When, under such circumstances, the trial judge certifies,—as in this case,—that the

record contains all the material facts, the statement is conclusive on the parties on appeal. The motion of the respondent Powell is therefore denied.

There are many errors assigned in addition to those specified in the foregoing statement. Some of these will be considered further on with a statement of the facts in connection therewith. We will first dispose of the particular assignment of errors heretofore pointed out, as they go to the foundation of the judgments, and, if well taken, the final decree must be set aside. In short, the claim of the appellants is that the judgments in favor of Powell, the Holland-Horr Mill Company, and the Griffith Heating & Plumbing Supply Company, are void so far as they affect the community property. The proposition is an important one, for:

"A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. . . . The purchaser at a sale by virtue of its authority finds himself without title and without redress. . . . if it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon some cause, either in the action in which the void judgment was entered or in some other action." 1 Freeman, Judgments (4th ed.), § 117.

The law is well settled in this state that both husband and wife must be brought in as parties in all actions to

foreclose mechanics' liens, when the property sought to be charged with the lien is community property. *Littell & Smythe Mfg. Co. v. Miller,* 3 Wash. 480 (28 Pac. 1035) ; *Sagmeister v. Foss,* 4 Wash. 320 (30 Pac. 80, 744) ; *Peterson v. Dillon,* 27 Wash. 78 (67 Pac. 397).

The law provides that civil actions shall be commenced by the service of a summons, or by filing the complaint with the clerk of the court and then making service of the summons within a certain time after filing the complaint. § 4869, Bal. Code. It is further provided that a copy of the complaint must be served upon the defendant with the summons, unless the complaint itself be filed in the office of the clerk of the court within five days after the service of such summons, in which case service of the copy may be omitted, but the summons in such case must notify the defendant that the complaint will be filed with said clerk. § 4873, Bal. Code. In this case the summones in the original action and cross actions did not contain any such notification. The manner of personal service is by delivering a copy of the summons to the defendant personally, or by leaving a copy of the summons at the house of his usual abode, with some person of suitable age and discretion then resident therein. § 4875, Bal. Code. Proof of service is, if made by the sheriff, his return; if made by any other person, the affidavit of such person indorsed or attached to the summons, or the written admission of the defendant. In case of service otherwise than by publication, the return, admission, or affidavit must state the time, place, and manner of service. § 4882, Bal. Code. Notices and other papers in the action may be served on the party or his attorney. If upon the party, it may be made by leaving the papers at his residence between the hours of six in the morning and nine in the evening, with

some person of suitable age and discretion. § 4889, Bal.
Code. The provisions of § 4889, *supra,* do not apply to
the service of a summons. § 4893, Bal. Code. Proof of
service of the summons can only be made in the manner
pointed out by the statute. It will be observed by refer-
ence to the affidavit of service on the original summons in
the action first brought by Powell that it was served on
James Nolan in the city and county of Spokane, state of
Washington, "by delivering to Susie A. Nolan, wife of
said James Nolan, and a person of suitable age and dis-
cretion, at the usual place of residence of said James
Nolan, a full, true, and correct copy of the *complaint* in
said action, said James Nolan not being at his residence
at the time of the said service." The service of the com-
plaint was not a service of the summons, and the return
does not show any service of the summons in the original
action on James Nolan. The court below was not, there-
fore, justified in assuming jurisdiction over the community
property where the husband had not been brought into the
action by the service of summons upon him. The affi-
davit as to the service of the amended complaint of Powell
on James Nolan is entirely silent as to the service of any
summons with it. James Nolan was not, therefore, so far
as appears from the record, ever served with a summons
in this action, and was therefore never brought into the
action, and, as he never appeared in the action, the court
had no jurisdiction over the community property belong-
ing to himself and wife, so as to enter a decree affecting
the same. The particular objection made by the appel-
lants as to the service we do not think tenable, and, if it
had appeared that the summons had been served as the
complaint was served, we would have held the service
good. This is a direct attack upon the judgment, and

presumptions, as in collateral attacks, will not prevail.
But we do not understand the rule, as to presumptions in
a direct attack upon the judgment, to go so far as to hold
that facts may not be inferred from other facts appear-
ing in the record.   The service in this case shows that
Susie A. Nolan was in the city of Spokane at the time of
the service at the usual place of residence of James Nolan,
that she was the wife of James Nolan, and that she was
served at the residence of James Nolan.   From these facts
it is right to presume that she resided with her husband
in his place of residence, for the law presumes that the
wife's domicile and place of residence are the same as the
husband's, and it may be further presumed that the resi-
dence of the husband was the house of his usual abode.
The record fails to show service on the husband of a sum
mons in this action; and the service on him of an amended
complaint alone, without his appearance, did not give the
court jurisdiction.   The return of service of the amended
complaint is also incomplete because it does not show that
it was left at James Nolan's residence between the hours
of six in the morning and nine in the evening, as required
by § 4889, *supra*.   No exception on this point is taken,
and we do not now deem it necessary to pass upon the
sufficiency of the return in this respect.   We call attention
to the fact so that the return may be amended if the
respondent so elect.   The record fails to show any service
of the summons or cross-complaint of the Holland-Horr
Mill Company on James Nolan.   The Holland-Horr Mill
Company assumed that James Nolan was before the court
by virtue of the service upon him of a summons in the
original action.   We have seen that the record fails to dis-
close any such service.   But assuming that the service of
summons in the original action was actually made, and

thereby James Nolan was in court, we think he was entitled to be served with a copy of the cross-complaint of the Holland-Horr Mill Company, or a summons notifying him it would be filed, and that no judgment on any demand of a defendant in a cross-complaint could be lawfully entered against him until he was so served and given the usual time to plead.

The statute relative to mechanics' liens (§ 5910, Bal. Code), provides that in any action brought to foreclose a lien all persons who, prior to the commencement of such, have legally filed claims of liens against the same property, shall be joined as parties either plaintiff or defendant, and that no action to foreclose a lien shall be dismissed at the instance of a plaintiff to the prejudice of another party to the suit who claims a lien. It is further provided that no person shall begin an action to foreclose a lien while a prior action to foreclose another lien on the same property is pending, and if such lienor is not a party to the original action he may apply to the court to be joined as a party thereto. Where judgment is demanded by a defendant lienor and the facts constituting his cause of action are not set out in the complaint, it is proper to set the same up in his answer in the nature of a cross-complaint; and we do not think, where there had been a personal service of the summons in the original case, service of a summons on the plaintiff or on the co-defendant is necessary. *Treiber v. Shafer,* 18 Iowa, 29; *Bevier v. Kahn,* 111 Ind. 200 (12 N. E. 169); *Cockle Separator Mfg. Co. v. Clark,* 23 Neb. 702 (37 N. W. 628). But the cross-complaint, although set up in the answer, is in the nature of an original action; and, as the person whose property is affected by the lien is entitled to service of a copy of the complaint, so, too, he is entitled to the service of a cross-complaint; for it is

through the allegations of the complaint or cross-complaint that he is informed of the nature and character of the demand against him and that it will be adjudicated, not only so far as it affects the plaintiff's claim, but also so far as it affects the defendant owners; and it is on the facts pleaded in the complaint or cross-complaint only that the court can pronounce judgment in case of default. There is just as much necessity for a defendant lienor to plead the facts constituting his lien, and the nature of his demand, and for the service of such pleading as for the plaintiff who institutes the action to foreclose the lien to plead the facts constituting his lien and to serve his complaint. The general allegation in the complaint, that the defendants have, or claim to have, a lien, is not such an allegation of facts as to authorize a judgment in favor of a defendant lienor against the defendant owner, and it is inserted in the complaint only for the purpose of having the court determine the priorities between the plaintiff and defendant lienors. The supreme court of Indiana has well said:

"The only real difference between a complaint and a cross-complaint is, that the first is filed by the plaintiff and the second by the defendant. Both contain a statement of the facts, and each demands affirmative relief upon the facts stated. In the making up of the issues and the trial of questions of fact, the court is governed by the same principles of law and rules of practice in the one case as in the other. When a defendant files a cross-complaint and seeks affirmative relief, he becomes the plaintiff, . . . ." *Ewing v. Patterson,* 35 Ind. 326; *Board of Commissioners of Tippecanoe County v. Lafayette, etc., R. R. Co.,* 50 Ind. 85.

There being no service of the cross-complaint on James Nolan, and no service of a summons notifying him that it would be filed, the judgment of the Holland-Horr Mill

Company, so far as it affects the community property, is invalid.

The record fails to show any service of the summons or cross-complaint of Dullanty on James Nolan. There is a finding to the effect that he was regularly and duly served with summons and cross-complaint. So far as the appellants are concerned, this must be taken as true, for they did not except to it; but if, in fact, James Nolan was not served with the summons or cross-complaint for the Dullanty demand, as we have indicated in passing on the Holland-Horr Mill Company judgment, no judgment affecting the community property would be valid.

Substitution, during the trial, of the Griffith Heating & Plumbing Supply Company as the successor of Dullanty is complained of. The assignment was a fact which occurred after the cross-complaint had been filed. The assignment was a fact which James Nolan and Susie A. Nolan, at least, had a right to controvert, and the same might affect a substantial right. The statute provides for supplemental pleadings to show facts which occur after the former pleadings are filed. § 4958, Bal. Code. Issues on such facts can only be joined on such supplemental pleadings, unless waived. The supplemental pleadings were not waived by either Susie A. or James Nolan, and the court erred in permitting the fact of the assignment to be shown, at least as against James Nolan, for he was not served with supplemental pleadings and can not be deemed to have waived the same, and he was not present at the trial, with opportunity to controvert the assignment. If a person *pendente lite* becomes assignee of the interest of a party in the suit and wishes to take part in it, he must bring forward his claim by supplemental pleadings; for under § 4824, Id., the real party in interest is required to

prosecute the action. The court will not permit a pur-
chaser *pendente lite* to come in and take part in the pro-
ceedings in the cause without supplemental pleadings, un-
less by consent of the other parties to the suit. Story,
Equity Pleadings (10th ed.), § 348; 21 Enc. Pl. & Pr.,
38, 39; *Lunt v. Stephens*, 75 Ill. 507; *Wilder v. Keeler*,
3 Paige, 164 (23 Am. Dec. 781). The court therefore erred
in entering a judgment in favor of the assignees affecting
the community property.

In view of our disposition of this appeal, we now pass
to the consideration of other assigned errors. The appel-
lants demanded a jury trial, stating as a reason that the
action was at common law and not in equity. The demand
was denied, and on this error is assigned. This court has
repeatedly held that an action to foreclose a lien, under
the law cited, is an equitable action, and for that reason
has entertained jurisdiction when the amount in contro-
versy was less than $200. *Fox v. Nachtsheim,* 3 Wash.
684 (29 Pac. 140). No error was committed in refusing
a jury trial.

Certain errors are assigned relative to the admission of
evidence. The admission of testimony as to work done by
Powell on other houses was harmless error. On January
16, 1900, Powell and the community had a settlement, in
order to ascertain how much was due on the contract, and
it was found that the sum due was $302.85. A memo-
randum in writing to this effect was signed by Susie A.
Nolan, who, in the settlement, was acting for the com-
munity. We think evidence of this fact was admissible,
and that the memorandum was also admissible.

The lien claim filed by Powell March 20, 1901, sets
forth that the materials furnished and the work and labor
done and performed in the erection, construction, and

completion of the building and improvements were and are
of the value of $920.25, of which $617.50 has been paid
It further sets forth that the original contract price for
the building of the house was $800, and was to be paid for
in cash as rapidly as the work was done and materials
furnished, and that the other improvements consisted in
the erection, construction, and completion of a fence and
sidewalk and furnishing materials therefor. A bill of par-
ticulars was attached to and made part of the lien notice.
The first item in this bill was: "September 20. Contract
price of house, $800." Then followed eighteen items for
extras between October 9th and December 23d. The first
credit was for the sum of $100, October 7th, and the last
credit was December 16th. There were seven credit items,
the largest payment at any one time being $250. The
memorandum of settlement heretofore referred to contain-
ed a stipulation that the money paid was to apply on the
extras and the balance on the contract. We think the evi-
dence fails to show fraud or collusion touching the settle-
ment, and it fully sustains the demand of the respondent
Powell as set forth in his lien notice, with the exception
of items amounting to about $53.99, which was for ma-
terials and labor on another house. The mortgage of the
Pennsylvania Mortgage Investment Company was made on
the 23d day of October, 1899, a month after most of the
extras had been furnished. It does not appear that there
was any agreement, when the payments were made, as to
their application in payment of any particular part of the
indebtedness. At the time the mortgage became a lien,
the sum of $200 only had been paid, and the mortgagee
was bound to take notice that there was a prior lien in
favor of Powell for at least $600 on the contract, as well
as for the extras that had been furnished up to that time.

22—27 WASH.

§ 5903, Bal. Code. Powell, in the absence of any direction from the community, had the right to apply the payment to his unsecured debt, and, as the application was made under an agreement with the community while the lien existed and before the lien notice was filed, it was binding upon the community; and the mortgagee, under the circumstances, had no right to complain, as its security was in no way diminished or impaired by such application. The remaining amount due on the lien was less than the amount of the lien when the mortgage was taken.

It is also claimed that, because the item of $53.99 was included in the lien notice, the entire lien must fail. The appellants cite us to several authorities sustaining this proposition; among others to *Dexter Horton & Co. v. Sparkman,* 2 Wash. 165 (25 Pac. 1070) and 2 Jones on Liens (2d ed.), § 1323. In the latter citation it is said:

"When matters for which there may be a lien are mingled with others for which no lien is given, they cannot be separated by a jury in accordance with oral evidence. It is not sufficient that the amount of the lien can be ascertained by extrinsic evidence, but the owner of the property is entitled to be informed of that fact from the account or statement of the lien filed in accordance with the statute."

The provisions of our law relating to liens and all the proceedings thereunder are to be liberally construed. § 5917, Bal. Code. To literally apply the rule insisted upon would nullify this provision of the statute. In this case the lien notice contains a bill of particulars, the lienable and non-lienable items can be readily ascertained by the owner, and the lienor seeks only to foreclose his lien as to one item, viz., a balance on the contract price for the erection of the house. This was clearly a lienable item. It is manifest that no fraud was attempted by the lienor in filing his lien notice. The mere fact that non-lienable

items may be included with lienable items is in itself insufficient to establish fraud and destroy the entire lien. Fraud should not be imputed where such items are included by mistake, or where the whole transaction plainly appears as in this case, or where such items are included under an honest belief that they are lienable items, although they may not be such. Under such circumstances we think it is the better rule to hold that the court may separate the lienable from the non-lienable items and render a decree of foreclosure for the amount of the lienable items. *Whittier v. Stetson & Post Mill Co.*, 6 Wash. 190 (33 Pac. 393, 36 Am. St. Rep. 149); *Duggan v. Washougal Land & Logging Co.*, 10 Wash. 84 (38 Pac. 856); *Peterman v. Milwaukee Brewing Co.*, 11 Wash. 199 (39 Pac. 452); *Bolster v. Stocks*, 13 Wash. 460 (43 Pac. 532, 534, 1099).

The admission of the Powell lien notice is assigned as error. The signature of Powell to the lien notice was proven. He produced the notice. He testified that he had filed the same. There was a certificate of the auditor, under his seal, as to the filing and recording of the instrument. We think this was a sufficient identification of the lien notice. The evidence showed that $235 of the amount claimed was for materials furnished at the request of, and under a contract with, Powell by the Holland-Horr Mill Company. This had not been paid, although the evidence showed that the community had been requested by Powell to pay it and deduct the amount from the contract price due him. At that time there was sufficient of the contract price due Powell to pay this claim. The appellants claim that because this had not been paid by Powell, he could not enforce a lien for the same. Powell was primarily liable to the Holland-Horr Mill Company, and it

could look to him for payment irrespective of any lien
which the law gave to it. We think, therefore, that Powell
had a right to claim a lien for the amount of such material,
the same as if he had furnished it directly himself. Sec-
tion 5909, Bal. Code, requires, however, that there must
be deducted from the contractor's claim *lien claims* for
labor performed and materials furnished to him in en-
abling him to carry out his contract. It requires the con-
tractor to defend any action brought to foreclose such liens
*at his own expense,* and provides that during the pendency
of the action the owner may withhold from the contractor
the amount of money for which the claim is filed; that in
case of judgment upon the lien against the owner or his
property the owner shall be allowed to deduct from the
contractor's claim the amount of the judgment and costs
of such sub-contractor or material men; and, if that amount
exceeds the amount due the contractor, he is allowed to
recover the excess from the contractor. It is only in case
of judgment on the lien of the laborer or material man
that the amount of the lien and costs is to be deducted
from the contractor's claim. In this case the court below
gave judgment in favor of the Holland-Horr Mill Com-
pany, but did not deduct the amount of the same and costs
from the contractor's claim. This should have been done,
unless the refusal of the owner to pay the Holland-Horr
Mill Company at the request of the contractor, when the
amount due the contractor from the owner exceeded the
amount due the Holland-Horr Mill Company, released the
contractor from the payment of the costs. We think it did,
for the owner could have prevented the costs and could have
protected himself in making such payment by setting the
same off against the amount due the contractor. We hold
that the judgment of the Holland-Horr Mill Company is

void, and that no judgment can be now entered thereon. It follows, therefore, that no part of the same should be deducted from the contractor's claim.

The appellants claim that no lien is given to a contractor who merely superintends and oversees the work, but who does no labor upon, and furnishes no material for, the construction of the building. Section 5900, *supra,* gives to every person performing labor upon or furnishing material for the construction of a building, etc., a lien thereon. Section 5904, *supra,* provides that within ninety days after the cessation of labor or furnishing of material, *a claim for such lien* shall be recorded in the office of the county auditor of the county where the building is located. The claim shall state the time of commencement and cessation of performing labor, etc. Section 5909, *supra,* provides that the contractor shall recover *on the claim filed by him* the amount thereof, after deducting the claim *of other parties for labor and material,* etc. Section 5911, *supra,* declares that in every case in which different liens are claimed the rank of such shall be: (1) All persons performing labor; (2) all persons furnishing material; (3) the sub-contractors; (4) the original contractors; and that the proceeds of the sale of the property on which the liens are foreclosed must be applied to each lien in order of its rank. If § 5900, *supra,* stood alone, there would be some reason to construe the law as contended for by appellants. *Winder v. Caldwell,* 14 How. 434; *Campbell v. Sterling Mfg Co.,* 11 Wash. 204 (39 Pac. 451); *Mohr v. Clark,* 3 Wash. T. 440 (19 Pac. 28). The other sections of the statute which we have cited clearly indicate that a sub-contractor or contractor is to be regarded as performing labor upon the building, and is entitled to file lien claims therefor the same as laborers and material men, but subor-

dinate to such liens. Construing the act, as we must, so as to give effect to every part thereof, we must hold that the contractor has a lien for the contract price, irrespective of the fact that he performed no service further than over-seeing the construction of the building according to his contract.

The Dullanty lien claim is against Susie A. Nolan, and her husband is not mentioned therein. The statement in the claim is to the effect that notice is given that the claimant, at the request of Susie A. Nolan, commenced to perform the labor and furnish the material, etc. The allegation of the cross-complaint, which is sustained by the proof, is that the labor and materials were furnished under a contract with Susie A. Nolan and her husband. Because of this variance the appellants claim that the Griffith Heating & Plumbing Supply Company should have been nonsuited on their motion for a non-suit. The lien claim states that Susie A. Nolan is the owner and reputed owner of the lots on which the lien is claimed. The cross-complaint alleges that Susie A. Nolan is the holder of the legal title, but that it was acquired with the community funds. We think the lien notice was sufficient. It falls within the rule laid down by us in the case of *Bolster v. Stocks,* 13 Wash. 460 (43 Pac. 532, 534, 1099). It is alleged in the cross-complaint that Dullänty entered into an oral contract with the community to perform the plumbing work and furnish the plumbing material on the four dwelling houses, and he was to be paid therefor what it was reasonably worth. The reasonable worth is alleged to be $1,212.75, on which $500 was paid. The amount on each house is also separately alleged in the cross-complaint and lien claim. He kept an account of the material that went into each house. For this reason appellants claim that his lien

claim must be on each house separately. The contract was an entire contract for the four houses. Section 5907, *supra,* provides that there may be one claim against two or more separate pieces of property, and requires the lien claim to designate the amount due on each piece of property, or it is postponed to other liens. We think the lien claim in this case was in strict compliance with the statute. As the contract was an entire one, separate lien claims were not required. *Phillips v. Gilbert,* 101 U. S. 721.

During the progress of the work $500 was paid upon account of the contract. On September 20, 1900, before any mortgage liens had attached, in order to enable the owners to sell the first house, the owners and contractor agreed that the first house should be released from the lien thereon. We think it clear from the evidence that this release was made in consideration of the payments already made on the contract. Under an honest belief that a certain item for water pipe, amounting to $135, was a lienable item, the same was included in the lien notice. This should be deducted *pro rata* from the liens on the four houses as segregated. The $500 should be appropriated to the payment, first, of the lien on the first house, and the balance to the payment *pro rata* of the liens on the remaining three houses, and for the balance the Griffith Heating & Plumbing Supply Company should have judgment of foreclosure, to which the mortgage liens should be declared subordinate. This is an equitable adjustment between the lienor, owners, and mortgagees. The release of the lien on the first house, although the contract was entire, did not destroy the lien on the remaining houses. Boisot, Mechanics' Liens, § 707; *Reilly v. Williams,* 47 Minn. 590 (50 N. W. 826); *Hall v. Sheehan,* 69 N. Y. 618; *Meixell v. Griest,* 1 Kan. App. 145 (40 Pac. 1070); *Carr v.*

*Hooper,* 48 Kan. 253 (29 Pac. 398). For the $135,—the non-lienable item,—a personal judgment only can be entered against the community.

We are strongly impressed, from reading the affidavit of the service of the summons, in the original action, that by oversight there was an omission in the affidavit of service, and that the person making the same intended to say that he served the summons with a copy of the complaint. If such is the fact, the respondent Powell should be allowed to correct the return so as to correspond with the fact, and, if the return is so corrected, the court below is authorized to enter judgment of foreclosure in favor of respondent Powell for the amount claimed by him in his lien notice, viz., $302.75, together with his costs and an attorney's fee of $50, on that portion of the property covered by the lien claim of Powell. If such correction in the return cannot be made, the action, so far as the Powell demand is concerned, is to be dismissed at the cost of the respondent Powell. If he so elect, he may also amend the return of the service as to the amended complaint. The statute provides that liens shall not bind the property subject to the lien for a longer period than eight calendar months, unless an action shall be commenced to enforce the lien. We have held in *Peterson v. Dillon, supra,* that this action must be commenced against both spouses within the time limited, or the court has not jurisdiction to enforce the lien against the community property. The Holland-Horr Mill Company did not commence its action against James Nolan by service of a summons or cross-complaint on him within the eight months, and it cannot now commence its action within that time against him. The action of the Holland-Horr Mill Company on its cross-complaint should be dismissed.

Under the statute, (§ 4837, Bal. Code), the firm of Griffith Heating- & Plumbing Supply Company, successor in interest to the Dullanty claim, had one year after October 17, 1900,—the time when the claim was assigned to them, —in which to move the court for leave to continue the action as successor of Dullanty. This motion was made at the trial and within the year. The supplemental pleadings necessary to show that it succeeded to the Dullanty interest were not filed. This is an irregularity that can be cured. The supplemental pleadings can yet be filed and served. The respondent, the Griffith Heating & Plumbing Supply Company, should be permitted to pursue this course, and a new trial should be had as to its claim, after proper service of such supplemental pleadings, and judgment entered as the court finds the fact to be, provided there was service of the summons or cross-complaint of Dullanty on James Nolan. We have searched the record before us in vain for any proof of such service. There is a recital in the decree and a finding to that effect; but if, as a matter of fact, no such service was made, the cross action of the Griffith Heating & Plumbing Supply Company should be dismissed.

The final judgment and decree of the court below is reversed, with costs to appellants, and this cause is remanded to the court below for the purpose of entering a final judgment and decree therein in conformity with this opinion.

·' REAVIS, C. J., and DUNBAR, FULLERTON, ANDERS, HADLEY and MOUNT, JJ., concur.

## ON PETITION FOR REHEARING.

WHITE, J.—This cause is reported in 67 Pac. 712. We further say that the filing of the complaint is but a step

in the commencement of an action. Service of the summons, either before or after the filing of the complaint, is necessary to complete the commencement of the action; and, if the service is by publication, after the same is completed the action is deemed to have been commenced at the time the complaint is filed. The mere service of a summons on one of the spouses in an action to enforce a mechanic's lien against community property is not the commencement of an action as to the other spouse, unless followed up by a service of the summons on such other spouse personally within the time given by § 5908, Bal. Code, or by publication within the time given by § 4869, Id.

The respondent Powell, sends up with his petition a correct transcript of the return of service of summons on James Nolan, from which it appears that James Nolan was duly served, so as to confer upon the court jurisdiction over him. The failure to show the service of the summons in the original action was through a mistake of the clerk in transcribing the return of such service; and as this was not called to the attention of the respondent in the brief of the appellants, or otherwise, save in the opinion herein, the judgment of the respondent Powell should be, and the same is, affirmed, subject, however, to the payment out of the proceeds thereof to the Holland-Horr Mill Company of $235, the amount of the lien of said last mentioned company.

The Holland-Horr Mill Company sends up with its petition an affidavit of service of summons and cross-complaint in this action on James Nolan. This affidavit, while purporting to be made on the 4th of September, 1900, was not filed in the court below until March 3, 1902, after the opinion was filed in this case. It does not purport to be indorsed upon or attached to any summons as required by sub-

division 2, § 4882, Bal. Code. Conceding that it states the facts, no excuse is shown for not filing this return before or at the time the action was tried. One of the errors assigned by the appellants was that the trial court erred in assuming jurisdiction of the lien claim of the Holland-Horr Mill Company, for the reason that the said mill company had not served James Nolan with summons or cross complaint, and the service on one of the spouses did not give the court jurisdiction to give judgment against the community. The finding of the court that there had been such service was specifically excepted to. There was nothing in the record, as filed in this court, proving or tending to prove such service, or a service of the cross complaint. As there must be a further hearing of this case, we will allow the Holland-Horr Mill Company to file in the court below the summons in its action, with proof of service indorsed upon or attached thereto; and when this is done the court below is authorized to enter judgment in favor of said respondent for the amount of its lien, with costs and attorney's fee of not exceeding $50. Otherwise the action as to said respondent is to be dismissed.

It appearing from the proof of service sent up with the petition of the Griffith Heating & Plumbing Supply Company that James Nolan was duly served with summons in the action of P. J. Dullanty, what we have said in our opinion on this subject has no application, so far as service of the summons by this respondent is concerned. If the Griffith Heating & Plumbing Supply Company had not moved in the court below to be substituted for P. J. Dullanty, and had permitted the action to proceed to judgment in the name of P. J. Dullanty, we would have affirmed the judgment, under the rule laid down in *Box v.*

*Kelso,* 5 Wash. 360 (31 Pac. 973). But when a stranger to the record sets up the assignment of the claim, originally sued upon by another, and seeks judgment in his own name, a different question is presented. James Nolan certainly had a right to contest the assignment. He might have a counter claim against the assignee which he would be entitled to set up. He was unquestionably entitled to be advised as to the reasons why a stranger to the record should recover a judgment against him. If he had been represented at the time the substitution was made, as was Susie A. Nolan, supplemental pleadings might not have been necessary, but even then it would be the better practice. But not being represented, we do not see how the fact of the assignment, arising after the service of the Dullanty pleadings, should in any way bind him, unless this fact was brought to his attention by supplemental pleadings. His default in failing to answer Dullanty's complaint simply amounted to his consent that Dullanty might have judgment. He did not thereby consent that some one else, a stranger to the record at the time of his default, might have judgment. Under the circumstances of this case we do not think it should be dismissed for want of prosecution, as provided in § 5908, Bal. Code.

This cause, as to the Griffith Heating & Plumbing Supply Company and as to the Holland-Horr Mill Company, is remanded to the court below for further proceedings as herein and in the original opinion indicated. The judgment of F. M. Powell, as herein provided, is affirmed. The said respondent to recover his costs on this appeal. The appellants to recover costs of this appeal against the respondents, the Holland-Horr Mill Company and the Griffith Heating & Plumbing Supply Company.

REAVIS, C. J., and ANDERS, MOUNT, DUNBAR, FULLERTON and HADLEY, JJ., concur.